UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAKEIL FAUTNER,<br>  Plaintiff, | : <br> : <br> : | CASE NO. 3:24-cv-01604 (MPS) |
| v. | : <br> : | |
| ANGEL QUIROS, et al.,<br>  Defendants. | : <br> : <br> : <br> : | November 25, 2024 |

**INITIAL REVIEW ORDER**

Plaintiff Shakeil Fautner, a sentenced inmate incarcerated at Cheshire Correctional Institution ("Cheshire")[1] in Cheshire, Connecticut, filed three complaints under 42 U.S.C. § 1983 in this case, all alleging violations of his constitutional rights. (ECF No. 1). For reasons that follow, the Court permits the plaintiff's Eighth Amendment failure to protect or deliberate indifference to safety claim from his first complaint to proceed against Correctional Officer Haynes, as well as a state-law claim for gross negligence. The remaining claims from the plaintiff's first complaint are dismissed, and the remaining defendants are terminated. The second and third complaints filed in this case are dismissed without prejudice and may be re-filed in separate cases.

---

[1] The Department of Correction website shows that the plaintiff was sentenced on October 8, 2023, and is currently housed at Cheshire. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=389743 (last visited November 15, 2024). The Court may take judicial notice of matters of public record. *See*, *e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

I. **Joinder of Claims**

Rule 18(a) of the Federal Rules of Civil Procedure permits "[a] party asserting a claim . . . [to] join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). But when there are multiple opposing parties, as there are here, Rule 20 of the Federal Rules of Civil Procedure permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

"What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 331 (D. Conn. 2016) (citation and quotation marks omitted). "The 'same transaction' requirement means that there must be some allegation that the joined defendants 'conspired or acted jointly.'" *Newkirk v. Doyle*, No. 3:24-CV-735 (MPS), 2024 WL 2882596, at *1 (D. Conn. June 7, 2024) (quotation omitted). As the Second Circuit has observed in the Rule 13 context,[2] whether a counterclaim arises out of the same transaction as the original claim depends upon whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). "The Court may 'drop a party' or 'sever any claim against any

---

[2] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

2

party' that it finds to be improperly joined." *Ibbison v. Quiros*, No. 3:22-CV-01163 (SVN), 2023 WL 1766440, at *7 (D. Conn. Feb. 3, 2023) (quoting Fed. R. Civ. P. 21).

The plaintiff filed three separate complaints in this case. The first complaint, ECF No. 1 at 1, relates to an inmate assault at Bridgeport Correctional Center ("BCC") on February 27, 2024. *Id.* at 5–8. The second complaint, *id.* at 26, relates to excessive use of force by correctional officers at New Haven County Correctional Center on June 20, 2022. *Id.* at 31–37. The third complaint, *id.* at 43, relates to an inmate assault at MacDougall-Walker Correctional Institution ("MacDougall-Walker") on November 29, 2022. *Id.* at 46–47. These complaints are accompanied by a letter requesting the Court to "add these 3 separate complaints/incidents into one suit[.]" ECF No. 1-1 at 3. The Court declines this request because joining these separate complaints into one suit would contravene Rule 20(a)(2).

The plaintiff acknowledges that "[t]hese incidents span almost three years and 4 different facilities." *See id.* at 1. As such, the claims arising from these incidents are not "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris*, 571 F.2d at 123. Because the claims lack a logical connection and do not share a "question of law or fact common to all defendants," defendants to each complaint cannot be joined in one action under Rule 20(a)(2). *See, e.g.*, *Ibbison*, *supra*, at *8 (finding joinder improper under Rule 20(a)(2) because plaintiff's deliberate indifference claims "relate[d] to different time periods, different incidents, and, for the most part, different Defendants."). Accordingly, the Court severs the claims in the plaintiff's second and third complaints and dismisses them without prejudice. *See Ibbison*, *supra*, at *8. The plaintiff may re-file these complaints in separate cases. *See id.*

3

## II.     Initial Review of First Complaint

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless of whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F.Supp.2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (*per curiam*)). Here, the plaintiff is proceeding *in forma pauperis*.

The Court has thoroughly reviewed all factual allegations in the plaintiff's first complaint, ECF No. 1 at 5–8, and conducted an initial review of the allegations therein under 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

### A. Allegations in First Complaint

While the Court does not set forth all the facts alleged in the plaintiff's first complaint, *id.*, it summarizes his basic factual allegations here to give context to its ruling. The plaintiff was housed at MacDougall-Walker on February 27, 2024. *Id.* at 5. He was scheduled to testify in a murder trial that day in Bridgeport, Connecticut. *Id.* Prison officials transported the plaintiff from MacDougall-Walker to BCC. *Id.* Ten minutes after the plaintiff arrived at BCC, he entered an "A/P" room, where he saw an inmate he had previously victimized. *Id.* The plaintiff is currently incarcerated as result of victimizing this inmate and still owes him restitution. *Id.*

The plaintiff and the other inmate "exchanged words" through the window of the inmate's holding cell. *Id.* at 6. The plaintiff called the other inmate a "weirdo" and a "rat." *Id.* The other inmate vowed to "see [him]" and "get [him]." *Id.* Correctional Officers Haynes, John

4

Doe, and Dezerunda observed the interaction between the plaintiff and the other inmate. *Id.* at 6–7. The plaintiff was unshackled and chained as he prepared to leave the A/P room. *Id.* at 6. While leaving the room, Haynes looked at the plaintiff and the other inmate and laughed. *Id.* The plaintiff asked Haynes what he was laughing about, and Haynes smirked, shook his head, and said "'nothing.'" *Id.*

The plaintiff exited the A/P room to enter a holding cell and await transport. *Id.* Before entering the holding cell, the plaintiff sat on a bench while waiting to use the restroom. *Id.* As the plaintiff was sitting there, Haynes looked at the plaintiff and then opened the door to the holding cell containing the inmate with whom he just had a verbal altercation. *Id.* That inmate then exited his holding cell and assaulted the plaintiff. *See id.* The plaintiff maintains that he suffered physical, mental, and emotional injury as a result of the assault. *Id.* at 5. The plaintiff alleges that Haynes released the other inmate from the holding cell "in hopes of watching a fight and [the plaintiff] getting harmed." *Id.* at 6. The plaintiff states that he had previous altercations with Haynes during another period of incarceration and that the two had not seen "eye to eye." *Id.*

Lieutenants Goldman and Garabaldi responded to the fight in progress. *Id.* at 7. The lieutenants sprayed the plaintiff and the other inmate with a chemical agent, restrained them, and escorted the plaintiff to the Restrictive Housing Unit. *Id.* When Goldman asked the plaintiff what had happened, the plaintiff told him that he was not to be at BCC due to a separation profile between the plaintiff and Garabaldi. *Id.*

**B. Discussion**

"Courts are under an obligation to extend 'special solicitude' to *pro se* litigants and ought to read their pleadings 'to raise the strongest arguments that they suggest.'" *Ibbison v. Quiros*, No. 3:22-CV-1163 (SVN), 2024 WL 4653075, at *2 (D. Conn. Nov. 1, 2024) (citing *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quotation omitted). The plaintiff's complaint suggests claims for "failure to protect, failure to supervise, deliberate indifference, physical injury, mental anguish, emotional distress, pain [and] suffering, gross negligence, [and] more." ECF No. 1 at 8. The plaintiff seeks monetary damages, injunctive relief, and declaratory relief. *See id.*

"Physical injury, mental anguish, emotional distress, [and] pain and suffering" relate to damages and are not torts. Gross negligence is a tort, but it is not actionable in a § 1983 action, although, as noted below, the Court will consider it under its supplemental jurisdiction. 28 U.S.C. § 1367; *see, e.g.*, *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had."); *Est. of King by & through King v. Annucci*, 693 F. Supp. 3d 310, 325–26 (N.D.N.Y. 2023*)* (noting that the Second Circuit previously recognized a theory of supervisory liability based on gross negligence in supervising subordinates who committed unlawful acts, but that theory is no longer applicable after it decided *Tangreti*).

*Tangreti* also eliminated liability based on a supervisor's failure to supervise. *See Jordan v. Gifford*, No. 3:19-CV-1628 (CSH), 2022 WL 3106965, at *26 (D. Conn. Aug. 4, 2022) (citing *Tangreti*, 983 F.3d at 620) ("To the extent that Plaintiff seeks to impose supervisory liability for

6

damages on Defendants for failure to supervise their subordinates, such claims are not plausible in light of the Second Circuit's recent ruling requiring a plaintiff to 'plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability' in order to hold a state official liable for damages under § 1983."). Thus, the plaintiff's claims for failure to protect and deliberate indifference to safety remain, along with his claim for gross negligence.

The legal standard for a claim for failure to protect is "the same as that for deliberate indifference to safety." *Verrette v. Bragdon*, No. 3:20-CV-501 (KAD), 2020 WL 1923242, at *2 (D. Conn. Apr. 21, 2020) (citing *Orr v. Marquis*, No. 3:18-cv-1908(MPS), 2019 WL 161504, at *3 (D. Conn. Jan. 10, 2019) (noting that the standard is the same for failure to protect and deliberate indifference to safety claims asserted by sentenced inmates)). Accordingly, the Court considers these claims together.

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A claim that a correctional officer failed to protect an inmate from attack rises to the level of a constitutional violation only when the officer acted with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* at 828.

To state an Eighth Amendment claim for deliberate indifference to safety or failure to protect from harm, a plaintiff must allege facts showing that he was confined under conditions that posed a substantial risk of serious harm and that the defendant both knew that he faced a

substantial risk of serious harm and disregards that risk by failing to take reasonable actions to abate or avert the harm. *Id.* at 847; *Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The defendant's actions must be more than merely negligent. The prison official must have acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

The plaintiff alleges that Haynes opened a hostile inmate's cell door after witnessing this inmate threaten the plaintiff. *See* ECF No. 1 at 6. The hostile inmate left his holding cell and then assaulted the plaintiff. *Id.* These allegations are sufficient to state a claim for failure to protect or deliberate indifference to safety. *See*, *e.g.*, *Manon v. Brantly*, No. 3:17-CV-758 (JCH), 2017 WL 4050307, at *4 (D. Conn. Sept. 12, 2017) (concluding that plaintiff who was assaulted by another inmate after correctional officer propped open his cell door had stated a plausible claim of deliberate indifference to safety).

## C. <u>Relief</u>

The plaintiff seeks monetary damages, among other relief. *See* ECF No. 1 at 8. To the extent he asserts official capacity claims for monetary damages against the defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, the Court considers only whether the plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

Plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Because plaintiff has been transferred from BCC to Cheshire, *see supra* note 1, his claims for injunctive and declaratory relief are moot. *See Quint v. Martin*, No. 3:21CV01695 (SALM), 2022 WL 561354, at *8 (D. Conn. Feb. 24, 2022) (citing *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002); *Salahuddin*, 467 F.3d at 272) (dismissing plaintiff's requests for injunctive and declaratory relief against officials as moot because plaintiff had transferred to a new facility).

A plaintiff seeking monetary damages from a defendant in his or her individual capacity must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti*, 983 F.3d at 620. The Second Circuit has held that "there is no special rule for supervisory liability." *Id*. at 618. Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id*. at 620. Thus, the plaintiff "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. at 616 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). A supervisor's mere knowledge of a constitutional violation is insufficient to establish personal involvement. *See id*. at 616–17 (noting that "[a] supervisor's 'mere knowledge of his

9

subordinate's discriminatory purpose' is not sufficient because that knowledge does not 'amount[ ] to the supervisor's violating the Constitution.'") (quoting *Iqbal*, 556 U.S. at 676).

The plaintiff sues numerous defendants here, including supervisory officials, *see* ECF No. 1 at 2–4, but he only alleges that one defendant—Haynes—opened the hostile inmate's cell door and permitted the inmate to assault him. *See id.* at 6. Because only this defendant was personally involved in the alleged constitutional violation, the plaintiff may only sue Haynes for damages in his or her individual capacity.

## IV.  Conclusion

The plaintiff may sue Correctional Officer Haynes for damages in his or her individual capacity for failure to protect or deliberate indifference to safety under the Eighth Amendment, as well as a state-law claim for gross negligence. All other claims are dismissed. All other defendants are terminated.

The Court enters the following additional orders.

(1)   **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for the defendant, mail a waiver of service of process request packet containing the Complaint and this Order to the defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If the defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2)   **The Clerk shall** send the plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendant shall file his or her response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If the defendant chooses to file an answer, he or she shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney

for the defendants of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 25th day of November 2024 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge